**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**AT WHEELING**

ROVER PIPELINE LLC,

     **Plaintiff,**

v.

ROVER TRACT NO(S). WV-MA-ML-051.000 COMPRISED OF TEMPORARY
EASEMENT(S) OVER A PARCEL OF LAND IN UNION DISTRICT, MARSHALL
COUNTY, WEST VIRGINIA, CONSISTING OF 1.063 ACRES, MORE OR LESS, AND
IDENTIFIED AS PARCEL NO(S). 13 13000200000000, AS MORE PARTICULARLY
DESCRIBED HEREIN

CHARLA A. SCHULTZ
21 16TH STREET
MCMECHEN, WV 26040

TIMOTHY E. SCHULTZ
21 16TH STREET
MCMECHEN, WV 26040

ANY UNKNOWN OWNERS,

     **Defendants.**

Civil Action No. ____5:19-cv-73____ (Stamp)

> ELECTRONICALLY
> FILED
> Mar 15, 2019
> U.S. DISTRICT COURT
> Northern District of WV

<u>**VERIFIED COMPLAINT FOR CONDEMNATION OF TEMPORARY EASEMENT(S)**</u>

     Plaintiff Rover Pipeline LLC ("Rover"), by and through its counsel, files this Verified

Complaint for Condemnation of Temporary Easement(s) ("Verified Complaint") pursuant to the

Natural Gas Act ("NGA"), 15 U.S.C. § 717f(h), and Federal Rule of Civil Procedure 71.1, and

states as follows:

     1.    This is an action to acquire temporary easement acreage (the "Easements,"

whether one or more) over the above-captioned parcel of land located in Marshall County, West

Virginia (the "Parent Tract"), under the power of eminent domain and to determine just

compensation to be paid to the owners for the Easements pursuant to the NGA, 15 U.S.C. § 717

*et seq.* The Easements Rover seeks to acquire are comprised of Temporary Workspace Easement(s), Temporary Road Access Easement(s), and/or Additional Temporary Workspace Easement(s) and are more particularly reflected, identified, described, and depicted on **Exhibit A** hereto.

2. Rover is a natural gas company as defined by Section 2(a) of the NGA, 15 U.S.C. § 717a(6). Rover is a Delaware limited liability company with a principal place of business at 8111 Westchester Drive, Suite 600, Dallas, Texas 75225. It is registered to do business in and is engaged in business in the states of West Virginia, Pennsylvania, Ohio, Michigan, and within this federal district. Rover is a company organized for the purpose, among other things, of transporting natural gas in interstate commerce through pipes and conduits, is an interstate natural gas company within the meaning of the NGA, 15 U.S.C. § 717a(6), and as such, is qualified to construct, own, operate, and maintain pipelines for the transmission of natural gas in interstate commerce.

3. The persons and entities who have or claim an interest in the Easements, whose names have become known or were ascertained by a reasonably diligent search of the records pursuant to Federal Rule of Civil Procedure 71.1(c)(3), and who have not yet executed an easement or other agreement with Rover for the Easements sought herein are those identified by name in the above caption ("Defendants"). There may be others who have or claim an interest in the Easements and whose names could not be ascertained by a reasonably diligent search of the records pursuant to Federal Rule of Civil Procedure 71.1(c)(3). These persons and/or entities are made parties to this action under the designation of "Unknown Owners" pursuant to Federal Rule of Civil Procedure 71.1(c)(3).

4. The authority for the taking is the NGA, 15 U.S.C. § 717a-z.

5.      Rover is the holder of a Certificate of Public Convenience and Necessity ("Certificate") issued on February 2, 2017, by the Federal Energy Regulatory Commission ("FERC"), under Docket Nos. CP15-93-000, CP15-93-001, CP15-94-000, and CP15-96-000, 158 FERC ¶ 61,109, a true and correct copy of which is attached hereto as **Exhibit B** and incorporated herein, to construct, operate, and maintain an interstate natural gas pipeline system consisting of approximately 713 miles of new, 24-inch to 42-inch diameter natural gas pipelines and appurtenant facilities (approximately 510.7 linear miles of pipeline easement and 713 total miles of pipe therein) with a total system capacity of up to 3.25 billion cubic feet per day (Bcf/d) of natural gas supply from Marcellus and Utica Shale producers and traversing through numerous counties in West Virginia, Ohio, Pennsylvania, and Michigan, through interconnections with existing pipeline infrastructure in Ohio and Michigan to supply interstate natural gas pipelines and storage facilities as well as markets in the Gulf Coast, Midwest, Southeast, East Coast, and Canadian regions (the "Rover Project"). The Rover Project represents an approximate $4.2 billion investment of private funds for public infrastructure under the NGA.[1]

6.      Rover and the Defendants previously entered into certain Agreements, some of which are recorded in the Office of the Clerk of the County Commission of Marshall County, West Virginia.  Rover now seeks a twenty-four-month extension of the temporary easement(s) and/or permit(s) obtained in the Agreements (collectively, the "Temporary Easements and Permits," whether one or more), to the extent reflected, identified, described, and depicted in the plat(s) attached as **Exhibit A** hereto, and which it is unable to acquire or agree on the price for the additional twenty-four month term through negotiations with Defendants.

---

[1] Due to re-routes for which FERC approval was obtained after the Certificate was issued, modifications to the figures cited in paragraph numbered 5 may have occurred.

7.     The Temporary Easements and Permits give Rover certain rights to utilize portions of the Parent Tract until completion of the initial construction, restoration, and remediation or upon the expiration of twenty-four months from the commencement of construction in the county in which the Temporary Easements and Permits are located, whichever occurs first.

8.     Therefore, Rover seeks to acquire the Easements in order to extend the term of all Temporary Easements and Permits, to the extent reflected, identified, described, and depicted in the plat(s) attached as **Exhibit A** hereto, for an additional twenty-four months to allow Rover to perform remediation work and stabilize the ground around the pipeline, where necessary, to ensure its safe and reliable operation.

9.     The amount of property sought for the Easements, the location of the Easements, and the intended uses of the Easements are within the scope of the Certificate and are necessary for the Rover Project.

10.    To the extent that Temporary Workspace Easement(s) are more particularly reflected, identified, described, and depicted on **Exhibit A** hereto, such Easement(s) are comprised of non-exclusive temporary workspace(s) and additional temporary workspace(s) to be used by Rover solely for the initial construction of the Pipeline[2] in the permanent pipeline easement(s) that Rover has acquired or will acquire by agreement or condemnation and for the restoration and remediation of the land after initial construction, which shall expire upon completion of the initial construction and restoration and remediation or upon the expiration of forty-eight months from the commencement of construction in the county in which the Temporary Workspace Easement(s) is/are located, whichever occurs first. Thereafter, all of

---

[2] As used herein, the term "Pipeline" refers to the interstate natural gas pipeline, not to exceed 42 inches in nominal diameter, to be constructed, operated, and maintained as part of the Rover Project.

Rover's privileges and rights on or to use of the Temporary Workspace Easement(s) shall terminate.  No pipeline or permanent facility of any kind or character shall be constructed by Rover on the Temporary Workspace Easement(s).  Rover shall have the right to remove trees, brush, crops, and other vegetation and obstructions from the Temporary Workspace Easement(s) while such easements remain in effect.

11.    To the extent that Temporary Road Access Easement(s) are more particularly reflected, identified, described, and depicted on **Exhibit A** hereto, such Easement(s) are comprised of non-exclusive temporary road access easement(s), which shall endure during the initial construction of the Pipeline and subsequent restoration only, to be used by Rover solely for the purpose of ingress and egress to and from public roads and other easements to which Rover has the right of access to and from the permanent pipeline easements, the temporary workspace easements and the surface site easements that Rover has acquired or will acquire by agreement or condemnation.  The Temporary Road Access Easement(s) shall expire upon completion of the initial construction and restoration or the expiration of forty-eight months from the commencement of construction in the county in which the Temporary Road Access Easement(s) is/are located, whichever occurs first.  Rover shall not prevent the owner(s) of the Parent Tract burdened with the Temporary Road Access Easement(s) from utilizing the roadways within such easement(s).  Before termination of the Temporary Road Access Easement(s), Rover will restore the roadways located within such easements to the same or better condition than existed immediately prior to Rover's use thereof, to the extent reasonably practicable.  Within the Temporary Road Access Easement(s) and while such easements are in effect, Rover shall have the right to use, repair, improve and/or maintain any existing roads

and/or maintain thereon new roadways.  No pipeline or permanent facility of any kind or character shall be constructed by Rover on the Temporary Road Access Easement(s).

12.    To the extent that Additional Temporary Workspace Easement(s) are more particularly reflected, identified, described, and depicted on **Exhibit A** hereto, such Easement(s) are comprised of non-exclusive additional temporary workspace(s) to be used by Rover solely for the restoration and remediation of the land after initial construction including but not limited to repair of slips resulting from construction of the Pipeline, which shall expire upon completion of the restoration and remediation or upon the expiration of forty-eight months from the commencement of construction in the county in which the Additional Temporary Workspace Easement(s) is/are located, whichever occurs first. Thereafter, all of Rover's privileges and rights on or to use of the Additional Temporary Workspace Easement(s) shall terminate.  No pipeline or permanent facility of any kind or character shall be constructed by Rover on the Temporary Workspace Easement(s).  Rover shall have the right to remove trees, brush, crops, and other vegetation and obstructions from the Temporary Workspace Easement(s) while such easements remain in effect.  The Additional Temporary Workspace Easement(s) shall include buffers of approximately 50 feet outside the existing area of the slips to provide for potential further migration of sediments (if the slip migrates) and to allow for work area to blend the repairs into the existing natural topography. Rover will not encroach or work beyond the area absolutely necessary to retrieve the sediments, repair the slip, and restore the area to pre-slip conditions to the extent practicable. Slip repair will utilize standard pipeline construction equipment, benching techniques, and other devices such as drain tiles, rip rap, rocked French drains, rocked toe keys, aerial seeding, etc. on an as needed, site-specific basis. Should geotechnical exploration determine the repair method requires permanent installation of sheet or soldier piling to retain the

sliding soil, the piles will be kept within the permanent pipeline easement(s) that Rover has acquired or will acquire by agreement or condemnation unless additional permanent easement acreage is required and obtained. If permanent piles are installed they will be cut off no less than 24 inches below final restored grade surface unless it is necessary due to slope and topographic conditions to leave portions above grade to ensure stability of the repair. It may be necessary due to the nature of the native material to export and/or import suitable material (soils) to effectively repair and restore the area. It will be necessary to go off the right-of-way to reasonably restore the area to pre-construction conditions. Trees will not be cleared beyond those required to allow for the repair of the slip and retrieval of the sediments. Trees removed may be already downed or dislodged by the slip, may present safety risks to workers, or may be within the area required for effective equipment movement associated with the sediment retrieval and slip repair. The landowner will be compensated by Rover for any tree loss or other property damages caused during the slip repair and land remediation and restoration. Any effects to the streams will be repaired and the streams restored to pre-slip conditions to the extent practicable. The slip repair areas are currently within and extend outside the approved LOD. The off-right-of-way sediments to be retrieved and the work area buffer are wholly within the original environmental study corridor. The work areas and the limits of the original study corridor will be clearly marked and work will not be conducted beyond the limits of the study corridor.

13.    The right to use the Easements shall belong to Rover and its agents, employees, designees, contractors, guests, invitees, successors, and assigns, and all those acting by or on behalf of it for the purposes stated in **Exhibit A** hereto.  In addition to the rights more particularly identified, described, and depicted on **Exhibit A** hereto, Rover seeks the right of ingress and egress over, across, and through the Easements, while they remain in effect, and to

access the same from other rights-of-way or easements and roads, to which Rover has the right

of access, for the above-stated purposes and for all other purposes convenient and necessary to

the exercise of the rights granted by the Certificate as applied and enforced by this Court.

14.     Rover incorporates by reference the Agreements.  Besides the twenty-four-month

extension for all Temporary Easements and Permits, to the extent reflected, identified, described,

and depicted in the plat(s) attached as **Exhibit A** hereto, Rover does not seek to amend or modify

the terms of the Agreements.  If there is any conflict between the terms herein and the terms of

the Agreement, Rover requests that the terms of the Agreement shall control, except with respect

to the term of the Temporary Easements and Permits, which shall be governed by this action, and

the size and location of the Easements sought to be condemned, which are accurately reflected,

identified, described, and depicted in the plat(s) attached as **Exhibit A** hereto.

15.     To the extent that Defendants' names and addresses are known, Rover has

attempted, but has been unable, to acquire the necessary easement or other agreements for the

Rover Project through negotiation with the Defendants.

16.     The compensation demanded or claimed by the Defendants for the Easements

exceeds $3,000.00.

17.     Jurisdiction for this proceeding in the Court derives from the NGA, particularly

15 U.S.C. § 717f(h), because this is an action to take property under the power of eminent

domain where the amount of compensation claimed by the owners of the property to be

condemned exceeds the sum of $3,000.00.

18.     Venue is proper in this judicial district pursuant to 15 U.S.C. § 717f(h) because

this is the district court of the federal judicial district where the Easements are located.

19.     Pursuant to Federal Rule of Civil Procedure 65(c), Rover has deposited or will deposit into the Court's registry the amount required by the Court as security for the compensation that will ultimately be awarded for the Easements sought, and subject to the withdrawal by Defendants on terms specified by this Court.

20.     Rover seeks an order granting it immediate entry upon the Easements that are more particularly reflected, identified, described, and depicted on **Exhibit A** hereto.

21.     Such immediate access and entry is necessary so that Rover can timely comply with applicable regulations and Rover's obligations set forth in the Certificate.

22.     As Rover will post an appropriate bond reflective of the estimate of just compensation due to the Defendants for the acquisition of the Easements, Defendants will not be harmed by Rover's immediate possession of the same, and will benefit from Rover's timely remediation efforts.

WHEREFORE, Rover respectfully prays that this Honorable Court grant judgment in its favor:

a.     Condemning the Easements identified herein;

b.     Granting Rover Injunctive Relief to permit Rover the right of immediate entry and access upon the Easements;

c.     Determining and awarding just compensation for the Easements; and

d.     Issuing all necessary and/or appropriate orders and decrees, and awarding all other general, equitable, and legal relief as the Court deems just and proper.

**/s/ Lori A. Dawkins**
Lori A. Dawkins (WV Bar #6880)
Steptoe & Johnson PLLC
lori.dawkins@steptoe-johnson.com
400 White Oaks Boulevard
Bridgeport, West Virginia 26330

(303) 389-4300

Lauren A. Williams (WV Bar #11943)
Steptoe & Johnson PLLC
lauren.williams@steptoe-johnson.com
400 White Oaks Boulevard
Bridgeport, West Virginia 26330
(304) 933-8000

William D. Wilmoth (WV Bar #4075)
Steptoe & Johnson PLLC
william.wilmoth@steptoe-johnson.com
1233 Main Street, Suite 3000
Wheeling, West Virginia 26003
(304) 233-0000

*Counsel for Plaintiff Rover Pipeline LLC*

**VERIFICATION**

STATE OF _Texas_ :
                            : SS
COUNTY OF _Harris_ :

I, Mark Vedral, after being duly sworn, depose and state:

1.  I am the Right of Way Director for Rover Pipeline LLC on the Rover Pipeline Project (the "Rover Project").

2.  I am responsible for overseeing the acquisition of all easements and other land rights along the route of the Rover Project that are required and necessary for the construction, operation, and maintenance of such project.

3.  I am authorized and qualified to make this verification on behalf of Rover based on my personal knowledge of the factual matters set forth in the Verified Complaint.

4.  I have read the foregoing Verified Complaint and am familiar with its contents.

5.  The statements of fact contained in the Verified Complaint are within my personal knowledge and are true and accurate.

By: _____

Mark Vedral

Sworn to and subscribed before me this _15th_ day of March 2019.

_____
Notary Public in and for the State of _TX_

My commission expires: _10/6/19_

LAURIE J. BENTON
Notary Public, State of Texas
Comm. Expires 10-06-2019
Notary ID 174965